## KATHARINE KUHN ET AL. V. JACOB FOSTER.

### Delivered June 12, 1897.

**Pleading—Question of Law—Admissibility of Evidence.**
Evidence as to the intention of the parties in signing a deed to land is inadmissible under an allegation that such deed, when read in connection with a contract to resell, constituted in legal contemplation a mortgage, the question being one of law, to be determined from the face of the instruments themselves.

APPEAL from Tarrant. Tried below before Hon. W. D. HARRIS.

*W. R. Sawyers,* for appellants.

*R. J. Boykin,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed September 21, 1895, by appellant and her husband against Jacob Foster, to cancel two

certain deeds which they had executed to Foster, upon the grounds that the two lots conveyed by said deeds were the separate property of the wife and their homestead at the time the deeds were made, and that they were procured by false and fraudulent representations, in that she was told that the deeds were simply mortgages, and being on her homestead could never be enforced against her, and that the notary public who took her acknowledgment did not explain to her the nature and contents of the deeds; and also that when said deeds were executed there was at the same time and as a part thereof an agreement signed and executed by the parties to the deed to the effect that the lots were to be reconveyed to her at the expiration of three years, upon the payment by her of $9000, and that these instruments when read together constituted a mortgage, and being given on the homestead, were void. It was not alleged that the transaction was intended to be a security for the loan of money, or that the instruments were intended by the parties to constitute a mortgage, but the averment was, in effect, that the legal meaning of the instruments when read together constituted a mortgage.

The defendant answered that he purchased the property from appellant, and that the instrument executed by him at the time the deeds were made was an agreement to resell at a stipulated price, and denied that he made any false representations to appellant or authorized any to be made, or that he had any knowledge thereof, if any were made.

The record shows that on the 9th day of February, 1895, E. Kuhn, husband of Katherine Kuhn, was indebted to Jacob Foster for borrowed money in the sum of $4000, for which he had executed his note; that it was past due, and that there was some interest due thereon. To secure this note, Kuhn had executed a mortgage on one of the lots in controversy, the one upon which he was carrying on his saloon business, after which he had conveyed both lots to his wife Katherine as a gift. Kuhn later called on Foster to borrow more money, but Foster declined to lend it. Kuhn then proposed to sell Foster the saloon property and the residence homestead for $7750, taking up the $4000 note and accepting Foster's notes for $3750, but requested that he have the privilege of repurchasing same at the expiration of three years. This, after consultation with his attorney, Foster agreed to do. Thereupon the deeds of conveyance in the usual form, with the covenants of general warranty, retaining the vendor's lien, and the agreement to resell and reconvey, were made and delivered.

The contract to resell is in these words:

"*State of Texas, County of Tarrant.*—Know all men by these presents, that whereas, we, E. Kuhn and Katherine Kuhn, his wife, of the first part, did sell and convey on the 9th day of February, 1895, to Jacob Foster, of the second part, the hereinafter described lots or tracts of land, and did receive as consideration therefor the payment and release of a debt of four thousand dollars due by said parties of the first part to said party of the second part, and also as further consideration the execution

and delivery to said E. Kuhn by said Jacob Foster of two promissory notes described as follows: Each dated February 9, 1895, payable to the order of E. Kuhn, and executed by said Jacob Foster, one for $2500, payable two years after date, and one for $1250, payable three years after date, and each bearing interest from date at the rate of 10 per cent per annum. Now, therefore, in consideration of the premises, it is hereby agreed between said E. Kuhn and wife, of the first part, and said Jacob Foster, of the second part, that the said parties of the second part shall have the privilege, at the expiration of three years from the 9th day of February, 1895, of having the said lots or tracts of land reconveyed to them by the said Jacob Foster, upon the payment by said parties of the second part to said Jacob Foster of the sum of nine thousand dollars. If said sum of money should not be paid at said time, then the title to said lots or tracts of land is to remain in the said Jacob Foster and his heirs.

"The said lots and tracts of land are described as follows: One lot or tract of land on the S. W. corner of Houston and First streets, in the city of Fort Worth, Tarrant County, Texas, fronting 25 feet on Houston street and running back 95 feet, and being the property known as 'Tivoli Hall' property. Also one lot or tract of land in said city of Fort Worth on the N. E. corner of Burnett and First streets, in said city, and fronting 65 feet on said First street and running back 100 feet, and being the property known as the residence property of E. Kuhn.

"Witness our hands this the 9th day of February, A. D. 1895.

"JACOB FOSTER,

"E. KUHN,

"KATHARINE KUHN."

E. Kuhn did represent to his wife Katharine that he was borrowing more money from Foster, and that the papers which she would be called upon to execute would be only a mortgage on the property and that it would not be good against her home, and that they could never take her home from her under it, and she was thus induced to sign and acknowledge the deeds. It does not appear from any testimony in the record that Jacob Foster or any agent or attorney of his ever asked her to sign the deeds or made any representations to her of any character whatever concerning the trade, or requested or authorized any one else to do so, nor does it appear that he knew of any such representations. The evidence fails to show that the officer who took her acknowledgment to the deeds failed in any manner to do his duty.

The court instructed the jury peremptorily to find a verdict for the defendant Foster, which they did, and this is complained of by appellants on this appeal.

We think the court properly instructed the jury. The pleadings of the plaintiffs nowhere set up the claim that these deeds and the written contract to resell were intended only as a security for the debt, or were intended to constitute a mortgage. The petition simply avers that the

instruments when read together in legal contemplation constituted a mortgage. This was a legal question to be determined only from the face of the papers themselves, and the issue raised could have been tried on demurrer, and under the averments in the petition no evidence as to the intention of the parties was admissible.

There was no evidence of any fraud on the part of Jacob Foster, but his conduct was fair and honorable in every respect, and hence there was nothing for the jury to pass on.

We therefore affirm the judgment of the District Court, with costs.

*Affirmed.*

Writ of error refused.